UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CAPITOL BODY SHOP, INC., et al.,

    Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, et al.,

    Defendants.

Case No: 6:14-cv-6000-Orl-31TBS
MDL Case No. 6:14-cv-2557-GAP-TBS

## REPORT AND RECOMMENDATION

Pending before me, on referral from the presiding district judge, are Defendants' motions to dismiss (Docs. 26, 31, 41, 44). Upon due consideration, I respectfully recommend that the motions be **GRANTED in part** and **DENIED in part**, that Count IV of Plaintiffs' amended complaint titled "Quasi Estoppel" be **DISMISSED with prejudice**, and that the remaining counts in the amended complaint be **DISMISSED without prejudice**.

### I. Background

Plaintiffs are a group of 25 Mississippi auto body repair shops and Defendants are 15 insurance companies that write automobile insurance in the state of Mississippi. Plaintiffs allege that Defendants conspired to fix prices and boycott Plaintiffs in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. The allegations in this case mirror those made by the plaintiffs in A&E Auto Body, Inc. v. 21st Century Centennial Insurance Co., No. 6:14-cv-00310-Orl-31TBS, which are summarized by the Court in its Order granting the defendants' motions to dismiss in that case:

> The Defendants in this case are alleged to "exert control" over the Plaintiffs' businesses (and the hourly rates paid by the Defendants) in a number of ways, beginning with agreements

generally referred to as "direct repair programs" or "DRPs". To participate in a particular insurer's DRP, a repair shop typically agrees to certain concessions in regard to such things as the prices it will charge and the priority given to vehicles owned by people who have insurance through that insurer. In exchange, the repair shop is listed as a "preferred provider". However, the Plaintiffs complain that the prices that they were permitted to charge under the DRPs were unfairly manipulated, that even repair shops that were not participating in DRPs were restricted to those price ceilings, and that repair shops that complained about these practices or tried to charge higher prices faced intimidation and boycotts from the insurers.

As a general proposition, each DRP contains language obligating the repair shop to charge the insurance company no more than the "market rate" for repairs in the general area. State Farm Mutual Automobile Insurance Company ("State Farm"), a Defendant in this case, determines this market rate. State Farm surveys the repair shops in a given area, determines the hourly rate charged by each repair technician, and then designates a rate just above the midpoint of all rates charged to be the "market rate." However, the Plaintiffs complain that State Farm alters the survey results to achieve a "wholly artificial 'market rate'" and uses this artificially lowered result to negotiate price decreases from repair shops. If a repair shop attempts to raise its hourly rate, State Farm will, among other things, remove it or threaten to remove it from the DRP.

The other Defendants, who do not perform such surveys, "specifically advised the Plaintiffs that they will pay no more than State Farm pays for labor." The Defendants refuse to pay a higher labor rate even to Plaintiffs who are not participating in a DRP.

The Plaintiffs also allege that the Defendants improperly lowered the amounts that they paid for repairs by, among other things, refusing to pay for replacement parts even where the repair shop thought replacement was a better option than repair and by requiring utilization of used parts even where new parts were available. The Plaintiffs also complain that the Defendants (1) are refusing to abide by the estimates set forth in the industry's leading collision-repair-estimating databases; (2) that they are refusing to pay for certain required materials and practices on the grounds that those items are included in the price of the repair; and (3) that they have imposed arbitrary caps on the amount they are willing to pay for paint as part of a repair.

2015 WL 304048, at *1-2 (M.D. Fla. Jan. 21, 2015).

Plaintiffs filed their original complaint in the United States District Court for the Southern District of Mississippi on January 7, 2014 (Doc. 1). Two months later, before any Defendant was served, they filed their amended complaint (Doc. 3). In addition to the Sherman Act claims, Plaintiffs' amended complaint asserts six state-law claims: Violation of Mississippi Code § 83-11-501 (Count I); Quantum Meruit (Count II); Unjust Enrichment (Count III); Quasi-Estoppel (Count IV); Tortious Interference with Business Relations (Count V); and Conversion (Count VI). Defendants filed motions to dismiss, Plaintiffs responded, and Defendants replied (Docs. 26-27, 31, 33, 41-42, 44-45, 67-70, and 72-75).

After these motions were fully briefed, the United States Judicial Panel on Multidistrict Litigation transferred this and three other cases to this district for coordinated or consolidated pretrial proceedings before District Judge Gregory A. Presnell. In re Auto Body Shop Antitrust Litigation, __ F. Supp. 3d. __, 2014 WL 3908000 (J.P.M.L. Aug. 8, 2014). On November 14, 2014, the Court held a hearing on the pending motions to dismiss in this and six other related cases (Case No. 6:14-cv-310, Doc. 282). On January 21, 2015, the Court entered its Order dismissing the amended complaint in the Florida case. A&E Auto Body, Inc. v. 21st Century Centennial Ins. Co., No. 6:14-cv-00310-Orl-31TBS, 2015 WL 304048 (M.D. Fla. Jan. 21, 2015). On February 9, Judge Presnell referred the pending motions to dismiss in this case to me for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## II. Legal Standards

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice

of what the claim is and the grounds upon which it rests, Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. Milbum v. United States, 734 F.2d 762, 765 (11th Cir.1984). In ruling on a motion to dismiss, the court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. SEC v. ESM Group, Inc., 835 F.2d 270, 272 (11th Cir.1988). The court must also limit its consideration to the pleadings and any exhibits attached to the pleadings. FED.R.CIV.P. 10(c); see also GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir.1993).

A plaintiff must provide enough factual allegations to raise its right to relief above the speculative level, Twombly, 550 U.S. at 555, and to indicate the presence of the required elements, Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1302 (11th Cir.2007). Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts will not prevent dismissal. Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir.2003).

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. 678 (internal citations and quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged–but it has not 'show[n]'–'that the plaintiff is entitled to relief.'" Id. at 679 (quoting FED.R.CIV.P. 8(a) (2)).

### III. Discussion

<u>Count I: Claim under Mississippi Code § 83-11-501</u>

Section 83-11-501 of the Mississippi Code, entitled "Requirement of repairs at particular shop prohibited," provides:

> No insurer may require as a condition of payment of a claim that repairs to a damaged vehicle, including glass repairs or replacements, must be made by a particular contractor or motor vehicle repair shop; provided, however, the most an insurer shall be required to pay for the repair of the vehicle or repair or replacement of the glass is the lowest amount that such vehicle or glass could be properly and fairly repaired or replaced by a contractor or repair shop within a reasonable geographical or trade area of the insured.

Plaintiffs argue that this statute creates a cause of action against Defendants for failing to pay an amount sufficient to "properly and fairly repair[]" insureds' vehicles (Doc. 3, ¶ 110; Doc. 68, p. 5). I disagree. The sole duty § 83-11-501 imposes on automobile insurance companies is to refrain from "requir[ing] as a condition of payment of a claim that repairs to a damaged vehicle ... must be made by a particular contractor or motor vehicle repair shop." See Addison v. Allstate Ins. Co., 97 F. Supp. 2d 771, 773 (S.D. Miss. 2000) ("[T]he statute unambiguously forbids only the conditioning of payment upon the selection of certain body shops, not the steering of insureds toward certain shops.")

The second clause of the statute limits the insurer's contractual duty to pay for repairs by providing that "the most an insurer will be required to pay" is "the lowest amount" for which the repair could be properly and fairly completed "by a contractor or repair shop within a reasonable geographical or trade area of the insured."

Plaintiffs argue that Defendants' motions to dismiss are premised upon "reading out" the portion of § 83-11-501 that references "the lowest amount that such vehicle or glass could be properly and fairly repaired" (Doc. 68, pp. 4-5; Doc. 69, p. 21; Doc. 70, p. 28). In fact, it is Plaintiffs who are reading words out of the statute when they construe the law as creating "a floor" rather than "a ceiling." Plaintiffs' construction of the law to impose a minimum payment requirement simply ignores the words "the most" in § 83-11-501. If permitted, this would turn the statute on its head. It would also be contrary to Mississippi law which requires courts "whenever reasonable" to construe statutes in a way that "gives effect to all the statutory language." Gilmer v. State, 955 So. 2d 829, 835 (Miss. 2007). Therefore, I recommend that Count I be dismissed.

In their responses to Defendants' motions to dismiss, Plaintiffs appear to argue that Defendants are "conditioning payment" on an insured's utilization of Defendants' preferred shops (Doc. 69, p. 22-23; Doc. 70, p. 29). If Plaintiffs can plead facts showing that Defendants do in fact condition payment of claims on the insured's use of preferred repair shops, they may be able to allege a violation of the statute. Cf. Addison v. Allstate Ins. Co., 97 F. Supp. 2d 771, 773 (S.D. Miss. 2000) (granting summary judgment to defendant insurer, where plaintiff provided no evidence that insurer conditioned payment on insured's use of a particular shop or shops); Christmon v. Allstate Ins. Co., 82 F. Supp. 2d 612, 615 (S.D. Miss. 2000) (same); Hardy Bros. Body Shop, Inc. v. State Farm Mut. Auto. Ins. Co., 848 F. Supp. 1276, 1287 (S.D. Miss. 1994) (same). For this reason, I recommend that the dismissal of Count I be without prejudice.[1]

### Counts II and III: Quantum Meruit and Unjust Enrichment

---

[1] In this report and recommendations I reach no conclusion about whether § 83-11-501 creates a private right of action. If Plaintiffs attempt to re-plead Count I, the Court may have to decide this question.

Mississippi courts sometimes distinguish between "quantum meruit" and "unjust enrichment." In Estate of Johnson v. Adkins, 513 So. 2d 922 (Miss. 1987), the Mississippi Supreme Court explained that "quantum meruit recovery is a contract remedy" which is measured by "the reasonable value of the materials or services rendered." 513 So. 2d at 927. The court described unjust enrichment on the other hand, as "an equitable remedy closely associated with 'implied contracts' and trusts," which "'applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another.'" Id. (quoting Hans v. Hans, 482 So. 2d 1117, 1122 (Miss. 1986)). The court said quantum meruit and unjust enrichment differ in the measure of recovery–for quantum meruit, the "reasonable value of materials or services rendered," and for unjust enrichment, the benefit received by the defendant. Id. The court held that "quantum meruit is the proper measure of recovery" in cases involving contracts, either express or implied in fact, with an open price term. Id.

In other cases, Mississippi courts have used "quantum meruit" synonymously with "quasi-contract" or contract "implied in law." See, e.g., In re Estate of Fitzner, 881 So. 2d 164, 173-74 (Miss. 2003). Fitzer identifies four elements for a quantum meruit claim: "(1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and (4) under such circumstances as reasonably notified person sought to be charged that plaintiff, in performing such services, was expected to be paid by person sought to be charged." Id. Under Mississippi law, a plausibly-pled quantum meruit claim of this sort is also a plausibly-pled unjust enrichment claim, although not all unjust enrichment claims are quantum meruit claims. Cf. Milliken

- 7 -

& Michaels, Inc. v. Fred Netterville Lumber Co., 676 So. 2d 266, 269-70 (Miss. 1996); Hans v. Hans, 482 So. 2d 1117, 1122 (Miss. 1986) ("Generally speaking, [unjust enrichment] is an equitable theme running throughout the law, closely associated with implied contracts and trusts.").

It is apparent from Plaintiffs' amended complaint that their quantum meruit claim is of the quasi-contract variety, rather than the implied-in-fact contract variety. They allege that "[q]uantum meruit rests upon the equitable principle that a party is not allowed to enrich itself at the expense of another" and that "the law implies a promise to pay a reasonable amount for [the repairs], even absent a specific contract therefor[]." Since quasi-contract claims represent a subset of unjust enrichment claims, Counts II and III are redundant, as were the quantum meruit and unjust enrichment claims in A&E Auto Body. See 2015 WL 304048, at *5-6.

Plaintiffs' amended complaint alleges that Defendants "enter[] [DRP] agreements," which contain "concessions of price," "with individual Plaintiffs" (Doc. 3, ¶¶ 48-49). Unjust enrichment is not available to the extent the parties have chosen to govern their relations by contract and the contract is valid and enforceable. Montgomery v. CitiMortgage, Inc., 955 F. Supp. 2d 640, 656-57 (S.D. Miss. 2013) ("The existence of an actual contract precludes any claim for unjust enrichment, which is based on a contract implied in law."); see also Powell v. Campbell, 912 So. 2d 978 (Miss. 2005) ("Unjust enrichment only applies to situations where there is no legal contract....").

Plaintiffs argue that prices fall outside the scope of the DRP agreements (Doc. 68, p. 8), but this is implausible given their allegations that "each DRP contains a general statement that the body shop will charge the respective insurance company no more for any particular repair than is the going rate in the market area," and that in State Farm's

DRPs, it is granted discretion to determine the market rate (Doc. 3, ¶¶ 58-59). The fact that the agreements themselves do not specify the prices for particular repairs or parts does not mean that price is a term outside the scope of those agreements where, as here, the agreements specify the method for determining price.

Plaintiffs also assert that the DRPs are not enforceable contracts, but they do not explain why (Doc. 68, p. 8). And, while it is undoubtedly true that not every Plaintiff entered into a DRP with every Defendant, the amended complaint does not specify which parties have and which have not.

Several Defendants raise a second argument why the quantum meruit and unjust enrichment claims should be dismissed. They contend that Plaintiffs had no reasonable expectation of payment in the amounts they demanded in light of Defendants' persistent refusal to pay those amounts (Doc. 27, pp. 9-10, Doc. 31, p. 23; Doc. 44, p. 22). Under Mississippi law, "a prerequisite to establishing grounds for quantum meruit recovery is [the] claimant's reasonable expectation of compensation." In re Estate of Fitzner, 881 So. 2d 164, 173 (Miss. 2003); see also Lauderdale Cnty. School Dist. v. Enterprise Consolidated School Dist., 24 F.3d 671, 688 (5th Cir. 1994) (citing Redd v. L&A Contracting Co., 151 So. 2d 205, 209 (Miss. 1963)). I agree with these Defendants that the allegations in Plaintiffs' amended complaint about the longstanding nature of Defendants' efforts to suppress prices renders implausible Plaintiffs' claim that they reasonably expected "full" payment. Plaintiffs have alleged that State Farm has fixed "market rates" for parts and repairs and that the other Defendants have "specifically" informed them that they will not pay more than State Farm pays (Doc. 3, ¶¶ 59, 80). Plaintiffs also allege that this conduct has been "ongoing, concerted, and intentional" and has continued "over the course of several years" (Id., ¶ 47).

Defendants' repeated and persistent refusal to pay the amounts demanded by Plaintiffs makes unreasonable any expectation on the part of Plaintiffs that Defendants would abruptly begin paying the amounts Plaintiffs believe their services are worth. Cf. Lauderdale Cnty. School Dist., 24 F.3d at 696-97 ("Quitman has refused to pay money since 1968, and it repudiated the entire agreement in 1977. Under these circumstances, Enterprise did not have a reasonable expectation of compensation, and therefore it should not recover on a theory of quantum meruit."); see also City of Calhoun v. N. Ga. Elec. Membership Corp., 443 S.E.2d 469, 472 (Ga. 1994) (holding that plaintiff city "never had a reasonable expectation that" defendant would make franchise payments, where defendant "unequivocally apprised" city that it would not pay); Blue Ash Auto Body, Inc. v. Progressive Cas. Ins. Co., 2011-Ohio-5785, at ¶ 12, 2011 WL 5444201, at *3 (Ohio App. Nov. 10, 2011) (auto body shops could not demonstrate that any enrichment of insurance company was unjust, where shops entered into agreements with insureds knowing in advance insurance company's estimates for the work and were free to refuse to do the work).

If Plaintiffs were unhappy with the prices Defendants were paying, they could have negotiated higher prices before performing the repairs or failing that, refused to perform repairs for Defendants' insureds. See Restatement (Third) of Restitution and Unjust Enrichment § 2, cmt. d ("Because contract is strongly preferred over restitution as a basis for private obligations, restitution is not usually available to a claimant who has neglected a suitable opportunity to make a contract beforehand."). For these reasons, I

recommend that Plaintiffs' unjust enrichment and quantum meruit claims be dismissed without prejudice.[2]

Count IV: Quasi-Estoppel

Under Mississippi law, quasi-estoppel "'precludes a party from asserting, to another's disadvantage, a right inconsistent with a position it has previously taken.'" Bailey v. Estate of Kemp, 955 So. 2d 777, 782 (Miss. 2007) (quoting Bott v. J.F. Shea Co., Inc., 299 F.3d 508, 512 (5th Cir. 2002)). Quasi-estoppel "'applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit.'" Id. (quoting Bott, 299 F.3d at 512).

Plaintiffs have failed to identify any authority–binding, persuasive, or otherwise– holding that quasi-estoppel is a cause of action. They have also failed to cite any case recognizing quasi-estoppel as a cause of action under Mississippi law, and T.C.B. Construction Co. v. W.C. Fore Trucking, Inc., 134 So. 3d 752, 764 (Miss. App. 2012), reversed in part on other grounds, 134 So. 3d 701 (Miss. 2013), strongly suggests that it is not. See 134 So. 2d at 764 ("Quasi-estoppel is not an independent claim that must be pled.").

While quasi-estoppel may be available to both plaintiffs and defendants, I conclude that it is not a cause of action or independent basis for relief.[3] Rather, it operates

---

[2] The Court dismissed the plaintiffs' quantum meruit and unjust enrichment claims in A&E Auto Body, primarily on the ground that the complaint in that case failed to explain how the plaintiffs conferred a benefit on the defendants. While the allegations in this case are substantially like the allegations in the A&E Auto Body complaint, Defendants in this case do not raise this argument in their motions to dismiss and therefore, I have not addressed the issue in this report and recommendation.

[3] While Plaintiffs identify no authority holding that "quasi estoppel" is a cause of action under Mississippi law, they chide Defendants for citing supposedly inapposite Mississippi cases and out-of-state cases. (See Doc. 67, p. 29-30; Doc. 68, p. 13-14; Doc. 69, p. 30; Doc. 70, p. 34-35). But when state law, as developed and interpreted by state courts, does not directly answer a question, federal courts must make an "Erie guess" as to how the state's highest court would answer the question. Because state high courts often look to the courts of other jurisdictions in deciding questions of first impression, see, e.g., Sheppard v. Mississippi State Highway Patrol, 693 So.2d 1326, 1329 (Miss. 1997), it is appropriate for this

defensively, by preventing another party from taking a particular position in litigation. T.C.B. Constr. Co., 134 So. 3d at 759.   Therefore, I recommend that the Court dismiss Count IV with prejudice.

Count V: Tortious Interference with Business Relations

Mississippi courts recognize a cause of action for tortious interference with business relations.   Cenac v. Murray, 609 So.2d 1257, 1269 (1992).   Cenac, which provides an extensive discussion of the tort, explains that a plaintiff has a cause of action when the defendant "engages in some act with a malicious intent to interfere and injure the business of another, and injury does in fact result." Id. at 1271.   Subsequent cases have identified four elements in a claim for tortious interference with (prospective) business relations: "'(1) The acts were intentional and willful; (2) The acts were calculated to cause damage to the plaintiffs in their lawful business; (3) The acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); (4) Actual damage and loss resulted.'" Biglane v. Under the Hill Corp., 949 So. 2d 9, 16 (Miss. 2007) (quoting MBF Corp. v. Century Business Comms., Inc., 663 So. 2d 595, 598 (Miss. 1995)).

Defendants argue that Plaintiffs cannot state a claim for tortious interference with business relations because Plaintiffs have failed to plead facts showing unlawful purpose and lack of justification.   (See, e.g., Doc. 27, p. 14; Doc. 33, p. 26).   They reason that because they are responsible for their insureds' repair costs, they have a legitimate interest in limiting those costs (Doc. 42, p. 16-17).   The Court rejected a similar argument in A&E Auto Body, explaining that while a party with a financial interest in a business

---

Court to do the same in making an Erie guess.

relationship may have a privilege to interfere in that relationship, "'the privilege carries with it the obligation to employ means that are not improper.'" 2015 WL 304048, at *8 (quoting McCurdy v. Collis, 508 So. 2d 380, 383 (Fla. 1st DCA 1987). Florida law, the Court explained, recognizes a cause of action for tortious interference "if improper methods were used to accomplish the interference." Id. (citing KMS Restaurant Corp. v. Wendy's Int'l, Inc., 361 F.3d 1321, 1327 (11th Cir. 2004); Morsani v. Major League Baseball, 663 So. 2d 653 (Fla. 2d DCA 1995)). It is less clear whether Mississippi courts would recognize a cause of action for tortious interference based on improper means, although Cenac suggests they might. See 609 So.2d at 1271 (quoting passage from Prosser & Keeton, The Law of Torts § 130, 1005–1014 (5th ed. 1984), explaining that a cause of action for tortious interference may be based on either improper purpose or unlawful means).

The Court need not resolve this issue now because other defects in the amended complaint warrant its dismissal. If Plaintiffs are to be believed, each and every Defendant "steered and attempted to steer" customers away from each and every Plaintiff (Doc. 3, ¶ 130). This is implausible in light of the allegation that (at least some) Plaintiffs had DRP agreements with (at least some) Defendants, and were therefore "preferred" shops (Doc. 3, ¶¶ 49-50; see also id., ¶ 99-100 (alleging that Defendants steered insureds and claimants to preferred or favored shops and away from "noncompliant" shops.")).

As the Court explained in its order dismissing the original complaint in the Florida case, this is not an acceptable manner of pleading:

> With limited exceptions, the allegations of wrongdoing are attributed, collectively, to every Defendant and alleged to have been perpetrated upon every Plaintiff. While there may be situations in which such collective descriptions are sufficient, at least some of the claims asserted here require

- 13 -

> individualized allegations. For example, if Plaintiffs' counsel were able to establish that Defendant A was unjustly enriched by shortchanging Plaintiff B, it would not entitle any other plaintiff to a judgment against Defendant A (or any other defendant).

(Case No. 6:14-cv-310, Doc. 110). As with the original complaint in the Florida case, the manner of pleading in this case results in allegations that every Defendant tortiously interfered in the business of every Plaintiff with respect to all the same customers. I recommend the Court dismiss this count with instructions that Plaintiffs identify specifically which Defendants interfered with which Plaintiffs.[4]

Count VI: Conversion

A defendant commits conversion under Mississippi law when it intentionally exercises dominion and control over a plaintiff's personal property in a manner which is inconsistent with the plaintiff's right. First Investors Corp. v. Rayner, 738 So. 2d 228, 234 (Miss. 1999). Conversion can be accomplished in a number of ways, including by "wrongful possession," "unauthorized or injurious use," or "wrongful detention after demand." Id. Regardless of the method, in every case, the plaintiff must have a possessory interest in the thing being converted.

---

[4] In the Florida case, the Court dismissed the tortious interference claims on the grounds that the plaintiffs there failed to allege "that the individuals to whom the Defendants made their misrepresentations about poor quality work and the like had actual or identifiable understandings or agreements with one or more of the Plaintiffs that likely would have been completed but for those misrepresentations," as required by Florida law. 2015 WL 304048, at *8. Mississippi law, by contrast, does not require "but for" causation at the individual customer level in cases of tortious interference with business relationships or prospective economic advantage. MBF Corp. v. Century Business Communications, Inc., 663 So. 2d 595, 600 (Miss. 1995).

The Nationwide Defendants argue that Rule 9(b) of the Federal Rules of Civil Procedure requires that Plaintiffs' allegation that Defendants made misrepresentations about Plaintiffs to Defendants insureds be pled with particularity. (Doc. 33, pp. 25-26). Rule 9(b) requires only "fraud" and "mistake" to be alleged with particularity, neither of which Plaintiffs allege. See Wenner v. Bank of America, NA, 637 F. Supp. 2d 944, 954 (D. Kan. 2009) (rejecting argument that defamation must be pled with particularity under Rule 9(b)).

The Mississippi Supreme Court has explained that "[a]n action will not lie for the conversion of a mere debt or chose in action. Hence, where there is no obligation to return identical money, but only a relationship of debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor." Mossler Acceptance Co. v. Moore, 67 So. 2d 868, 873 (Miss. 1953) (internal quotations omitted). In other words, "the failure to pay a debt is not conversion." Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 581 (Pa. Super. Ct. 2003).

Plaintiffs allege that they performed work "for which Defendants have refused to make payment," and that this "constitute[s] a conversion of Plaintiffs' moneys." (Doc. 3, ¶¶ 134-35). Since the failure to pay a debt does not amount to conversion, and because it does not give rise to a right to specific and identifiable money in the debtor's possession, I recommend that Plaintiffs' conversion claim be dismissed without prejudice, as in A&E Auto Body.

### Counts VII and VIII: Federal Antitrust Claims

Plaintiffs' antitrust claims are indistinguishable from the claims asserted by the plaintiffs in A&E Auto Body, Inc. On January 21, 2015, the Court dismissed those claims without prejudice, with leave to amend. A&E Auto Body, 2015 WL 304048, at *9-12. Because the Court's reasoning in A&E Auto Body applies to Plaintiffs' amended complaint in this case, I recommend that Counts VII and VIII be dismissed without prejudice, for the reasons stated in the dismissal order in A&E Auto Body.

### IV. Recommendation

Upon consideration of the foregoing, I respectfully recommend that Defendants' Motions to Dismiss be **GRANTED in part** and **DENIED in part** and:

1. Counts I-III and V-VII of the amended complaint be **DISMISSED without prejudice**, with 21 days leave to amend; and

2. Count IV of the amended complaint be **DISMISSED with prejudice**.

Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. Fla. R. 6.02, within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on February 9, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record