UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CAPITOL BODY SHOP, INC.,
AUTOMOTIVE ALIGNMENT & BODY
SERVICE, INC., ALEXANDER BODY
SHOP, LLC, BILL FOWLER'S
BODYWORKS, LLC, BOLDEN BODY
SHOP, LLC, CAPITOL BODY SHOP OF
RIDGELAND, INC., CAPITOL BODY
SHOP OF BYRAM, INC., CLINTON
BODY SHOP, INC., CLINTON BODY
SHOP OF RICHLAND, INC., CRYSTAL
CAR CARE, INC., HYPERCOLOR
AUTOMOTIVE RECONDITIONING, INC.,
LAKESHORE BODY SHOP, INC.,
PATRIOT AUTO BODY, LLC, PORTER'S
BODY SHOP, INC., PROTOUCH
COLLISION, LLC, RIDGELAND BODY
SHOP, INC., ROY ROGERS BODY
SHOP, INC., SMITH BROTHERS BODY
SHOP, INC., SMITH BROTHERS
COLLISION CENTER, INC., WALKERS
COLLISION CENTER, INC., MARK
COOK, BARRY LEWIS, CANTON
COLLISION, LLC, EAST MCCOMB
BODY SHOP, INC., GEORGE CARR
BUICK PONTIAC CADILLAC GMC, INC.
and B & W BODY SHOP, INC.,

     Plaintiffs,

v.                                                                          Case No:   6:14-cv-6000-Orl-31TBS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, STATE FARM
FIRE AND CASUALTY COMPANY,
PROGRESSIVE GULF INSURANCE
COMPANY, PROGRESSIVE CASUALTY
INSURANCE COMPANY, ALLSTATE
PROPERTY AND CASUALTY
COMPANY, ALLSTATE INSURANCE
COMPANY, NATIONWIDE PROPERTY
AND CASUALTY INSURANCE
COMPANY, NATIONWIDE MUTUAL

INSURANCE COMPANY, GEICO
GENERAL INSURANCE COMPANY,
GEICO INDEMNITY COMPANY, UNITED
SERVICES AUTOMOBILE
ASSOCIATION, USAA CASUALTY
INSURANCE COMPANY, SAFECO
INSURANCE COMPANY OF ILLINOIS,
SHELTER MUTUAL INSURANCE
COMPANY, DIRECT GENERAL
INSURANCE COMPANY OF
MISSISSIPPI, SHELTER GENERAL
INSURANCE COMPANY, MISSISSIPPI
FARM BUREAU CASUALTY
INSURANCE COMPANY and
MISSISSIPPI FARM BUREAU
CASUALTY INSURANCE COMPANY,

     Defendants.

_____

## REPORT AND RECOMMENDATION

     This case comes before me on referral from the district judge, for report and

recommendation on the questions of state law raised in the following motion papers:

- Motion of Defendants Nationwide Mutual Insurance Company, Nationwide Property and Casualty Insurance Company, and Safeco Insurance Company of Illinois to Dismiss Plaintiffs' Second Amended Complaint (Doc. 89);

- Certain Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 90);

- Geico General Insurance Company and Geico Indemnity Company's Motion and Supporting Memorandum to Dismiss Second Amended Complaint and Demand for Jury Trial (Doc. 92);

- Progressive's Joinder and Supplement to Motion to Dismiss Second Amended Complaint (Doc. 93);

- Geico General Insurance Company and Geico Indemnity Company's Motion and Supporting Memorandum to Dismiss Counts 3, 4, and 5 of the second Amended Complaint by Clinton Body Shop, Inc., and Clinton Body Shop of Richland, Inc., and Demand for Jury Trial (Doc. 94);

- Joinder by Mississippi Farm Bureau Casualty Insurance Company in Certain Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 95);

- Joinder by Direct General Insurance Company of Mississippi in Certain Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 96);

- Plaintiffs' Response to Defendants' Motion [sic] to Dismiss (Doc. 98);

- Reply Memorandum of Defendants Nationwide Mutual Insurance Company, Nationwide Property and Casualty Insurance Company, and Safeco Insurance Company of Illinois in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 99);

- Geico General Insurance Company and Geico Indemnity Company's Reply in Further Support of Motion to Dismiss Second Amended Complaint and Demand for Jury Trial (Doc. 101);

- Geico General Insurance Company and Geico Indemnity Company's Reply in Further Support of Motion to Dismiss Counts 3, 4, and 5 of the Second Amended Complaint by Clinton Body Shop, Inc., and Clinton Body Shop of Richland, Inc. (Doc. 102);

- Certain Defendants' Reply in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 103); and

- Progressive's Reply in Further Support of its Supplemental Motion to Dismiss the Second Amended Complaint (Doc. 104).

After due consideration, I respectfully recommend that the motions be **GRANTED in part** and **DENIED in part**.

## I. Background

The Court is familiar with the background of this case.   Plaintiffs are a group of Mississippi auto body repair shops and Defendants are insurance companies that write automobile insurance in the state of Mississippi.   Plaintiffs allege that over a course of years, they have provided motor vehicle collision repair services to Defendants' policyholders and claimants (Doc. 87, ¶ 65).   Plaintiffs complain that "Defendants have engaged in an ongoing, concerted and combined intentional course of action and conduct

to improperly and illegally control and depress automobile damage repair costs to the

detriment of the Plaintiffs and the substantial profit of the Defendants."   (Id. at ¶ 67).

Defendants have allegedly

>intentionally combined to utilize their aggregated market
>power to exert control over every aspect of the collision repair
>industry, including but not limited to price fixing of labor rates,
>price fixing of replacement parts, compulsory use of
>substandard or dangerous replacement parts, compulsory use
>of a parts procurement program which directly financially
>benefits State Farm Defendants and indirectly benefits the
>remaining Defendants, boycotting shops which refuse to
>comply with either fixed prices or use of substandard or
>improper parts, and interfering with Plaintiffs' current and
>prospective business relations by intentionally
>misrepresenting and making knowingly false statements
>regarding the quality, efficiency and ethical reputation of
>Plaintiffs' businesses, exerted economic duress and coercion
>upon both the Plaintiffs to capitulate and upon consumers,
>including direct threats to consumers to refuse coverage or
>portions of available coverage if consumers persist in their
>efforts to patronize Plaintiffs' businesses.

(Id. at ¶ 69).

Plaintiffs filed their original complaint in the United States District Court for the

Southern District of Mississippi on January 7, 2014 (Doc. 1).   Two months later, before

any Defendant was served, they filed their amended complaint (Doc. 3).   Plaintiffs alleged

that Defendants conspired to fix prices and boycott Plaintiffs in violation of § 1 of the

Sherman Act, 15 U.S.C. § 1.   Plaintiffs' amended complaint also asserted six state-law

claims: violation of Mississippi Code § 83-11-501; quantum meruit; unjust enrichment;

quasi-estoppel; tortious interference with business relations; and conversion.   Defendants

moved to dismiss, Plaintiffs responded, and Defendants replied (Docs. 26-27, 31, 33, 41-

42, 44-45, 67-70, and 72-75).   After the motions were fully briefed, the United States

Judicial Panel on Multidistrict Litigation transferred this and three other cases to this

district for coordinated or consolidated pretrial proceedings before Senior District Judge

Gregory A. Presnell.   In re Auto Body Shop Antitrust Litigation, 37 F. Supp. 3d. 1388

(J.P.M.L. Aug. 8, 2014).   This Court dismissed the quasi estoppel count with prejudice,

and the remaining without prejudice, with leave to amend (Docs. 82, 83).

Plaintiffs' Second Amended Complaint ("SAC") alleges claims under the Sherman

Act and state-law claims for tortious interference with business relations, quantum meruit,

and violation of Mississippi Code § 83-11-501 (Doc. 87).   All Defendants have motioned

the Court to dismiss the SAC with prejudice, Plaintiffs' have responded, and Defendants

have filed replies.

## II. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the

claim showing that the pleader is entitled to relief."   Conley v. Gibson, 355 U.S. 41, 47

(1957), overruled on other grounds, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the  sufficiency of

the complaint; it does not decide the merits of the case.   Milburn v. United States, 734

F.2d 762, 765 (11th Cir. 1984).   In determining whether dismissal on this basis is

appropriate, the complaint must be construed in the light most favorable to the plaintiff,

and all well-pleaded facts must be accepted as true.   Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009); Ironworkers Local Union 68 v. AstraZeneca Pharm., LP, 634 F.3d 1352, 1359

(11th Cir. 2011).   The Supreme Court has explained that "once a claim has been stated

adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint."   Twombly, 550 U.S. at 546.   The court should liberally

construe the complaint's allegations in the plaintiff's favor.   Jenkins v. McKeithen, 395

U.S. 411, 421 (1969).   But, a claim for relief "requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.

"Factual allegations must be enough to raise a right to relief above the speculative

level[.]" Id.   A complaint must be dismissed if it does not plead "enough facts to state a

claim to relief that is plausible on its face." Id. at 570.   Legal conclusions devoid of

factual support are not entitled to an assumption of truth.   Mamani v. Berzain, 654 F.3d

1148, 1153 (11th Cir. 2011) (citing Iqbal, 556 U.S. at 678); Davila v. Delta Air Lines, Inc.,

326 F.3d 1183, 1185 (11th Cir. 2003).

### III. Discussion

Count III: Tortious Interference with Business Relations

Mississippi courts recognize a cause of action for tortious interference with

business relations.   Cenac v. Murray, 609 So.2d 1257, 1269 (Miss. 1992).   Cenac,

which provides an extensive discussion of the tort, explains that a plaintiff has a cause of

action when the defendant "engages in some act with a malicious intent to interfere and

injure the business of another, and injury does in fact result." Id. at 1271.   Subsequent

cases have identified four elements in a claim for tortious interference with (prospective)

business relations:

> (1) The acts were intentional and willful;
>
> (2) The acts were calculated to cause damage to the plaintiffs
> in their lawful business;
>
> (3) The acts were done with the unlawful purpose of causing
> damage and loss, without right or justifiable cause on the part
> of the defendant (which constitutes malice);
>
> (4) Actual damage and loss resulted.

Biglane v. Under the Hill Corp., 949 So.2d 9, 16 (Miss. 2007) (quoting MBF Corp. v.

Century Bus. Commc'ns, Inc., 663 So.2d 595, 598 (Miss. 1995)).   "In order to prove its

*prima facie* case of damages, 'the plaintiff must show (1) a loss, and (2) that defendant's conduct caused the loss.'"   MBF Corp., 663 So.2d at 598 (quoting Cenac, 609 So.2d at 1271).   A plaintiff must support these elements, including malice, with sufficient plausible factual allegations.   See BC's Heating & Air & Sheet Metal Works, Inc. v. Vermeer Mfg. Co., No. 2:11-cv-136-KS-MTP, 2012 WL 642304, at *3 (S.D. Miss. Feb. 27, 2012) (dismissing tortious interference claim; allegations did "not reflect the sort of intentional, calculated effort–or malice–that is required").

Plaintiffs' previous claims for tortious interference were dismissed because they employed group pleading which resulted in allegations that every Defendant tortiously interfered in the business of every Plaintiff with respect to all the same customers.   The Court found these allegations implausible, informed Plaintiffs that their tortious interference claims required individualized allegations, and recommended that Plaintiffs identify which Defendants tortuously interfered with which Plaintiffs (Doc. 82, pp. 13-15).

Defendants seek dismissal of the tortious interference count in the SAC on the grounds that Plaintiffs continue to rely on group pleading; the averments in the SAC are largely conclusory; Plaintiffs have not alleged facts which, if true, would establish all elements of their claim; their allegations are implausible; and Defendants' communications with their insureds are privileged (Docs. 89, pp. 18-19; 90, pp. 17-22; 92, pp. 19-22; 94-96; 99).

Plaintiffs make the following allegations about State Farm:[1]

> 305.   In early 2014, Gail Hampton notified State Farm she was taking her vehicle to Plaintiff Alexander's Body Shop for repairs.   State Farm told her she was required to take her vehicle to an approved shop for an estimate before taking the vehicle to Alexander's for repairs.   The two shops State Farm

---

[1] In the SAC, "State Farm" is a collective reference to State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (Doc. 87, ¶ 51).

said she could take her vehicle to for an estimate were far away, one in Jackson, Mississippi, and the other in Louisiana. Ms. Hampton argued the distance and insisted she wanted to go to Alexander's but State Farm told her she had no choice but to comply.   Ms. Hampton took her vehicle to the Jackson shop as it was closer than the shop in another state and ended up leaving the vehicle there for repairs because the distance was so great, took up so much time and effort and she was a senior citizen.   Ms. Hampton would have consummated the business with Alexander's but for State Farm's illegal insistence she had to take her vehicle to another shop for an estimate because Will Alexander, owner/operator of Alexander's Body Shop, is Ms. Hampton's nephew.

306.  In a separate incident in 2014, State Farm told Martin Hampton he was required to take his vehicle to an approved shop for an estimate before he was allowed to go to Alexander's Body Shop for repairs.   Mr. Hampton argued with State Farm, telling State Farm he only wanted to go to Alexander's but State Farm said Mr. Hampton had no choice. Mr. Hampton complied as he was told he had no choice. Because of the distance of the State Farm shop he was compelled to go to, the time, effort and difficulty, Mr. Hampton capitulated and left his vehicle for repairs at the State Farm preferred shop.   Mr. Hampton would have consummated the business with Alexander's but for State Farm's illegal insistence he had to take his vehicle to another shop for an estimate because Will Alexander, owner/operator of Alexander's Body Shop, is Mr. Hampton's nephew.

(Doc. 87, ¶¶ 305-06 (emphasis in original)).

The SAC contains the following allegations against Progressive:[2]

307.   Swatiben Desai told Progressive she was taking her vehicle to Plaintiff AutoWorks Collision for repairs in early 2015.   Progressive told Ms. Desai that AutoWorks would charge her more for repairs, that if she didn't go to their preferred shop, she would be liable for storage fees, that she would have to pay more for repairs if she went to her preferred shop, that if she went to their preferred shop, Progressive would guarantee the work but would not if she went to the shop of her choice.   Ms. Desai capitulated to the pressure and took her vehicle to Progressive's preferred shop, Service King, in Jackson for an estimate, where Progressive persistently told

---

[2] In the SAC, "Progressive" is a collective reference to Progressive Gulf Insurance Company and Progressive Casualty Insurance Company (Id. at ¶ 52).

her to leave the vehicle at Service King, "because you're already here, it makes more sense."

308.   Again, Ms. Desai capitulated to the pressure and left her vehicle with Service King.   When it was returned to her, Ms. Desai immediately noticed several problems with the repairs and took the vehicle to AutoWorks, where she had stated to Progressive she wanted to go in the first place.   After inspecting the vehicle, AutoWorks found unrepaired damage to the front end, the vehicle was out of alignment and pulled to the right, the engine cradle bolts were not properly replaced, welds were incomplete and without corrosion protection, the air conditioner condenser was not properly installed or recharged. Overall, the safety of the vehicle after Service King repairs was compromised.

309.   Ms. Desai would have taken her vehicle to AutoWorks for the initial repairs but for Progressive's interference.

310.   Consumer Kerri Mitchell identified Plaintiff Walkers Collision as her chosen repair facility to Progressive in January, 2015.   Progressive told her that if she took her car to a preferred shop, Progressive would guarantee the repairs for life.   Progressive further told Ms. Mitchell that she was <u>required</u> to choose from one of three repair facilities, one in Louisiana, one in Gulfport (over an hour away) or one local.   Ms. Mitchell did not wish to use any of those, she wished to use the local shop she had selected but, based upon Progressive's statements that she had to use one of the three shops they named, she felt she had no choice if she wanted her car fixed. Ms. Mitchell would have done business with Plaintiff Walkers but for Progressive's interference.

(<u>Id</u>. at ¶¶ 307-10 (emphasis in original)).

These are the only averments in the SAC that a specific Defendant successfully steered someone away from one of Plaintiffs' repair shops.   Plaintiffs alleges that State Farm, Progressive and the other Defendants acted maliciously and without a justifiable cause.   To support these conclusions, they allege that Defendants would have paid the same amount for the repairs regardless of who performed them, so the only reasonable explanation for Defendants' actions was to punish Plaintiffs and cause them damage. Plaintiffs also allege that some of the statements Defendants made to customers were

false.   I find these allegations sufficient to state a claim for tortious interference with business relations under Mississippi law by Plaintiff Alexander Body Shop, LLC, against State Farm; Plaintiff Hypercolor Automotive Reconditioning, LLP, d/b/a AutoWorks Collision Specialists, LLP, against Progressive; and Plaintiff Walkers Collision Center, Inc., against Progressive.   See Coleman & Coleman Enters., Inc. v. Waller Funeral Home, 106 So. 3d 309, 315-16 (Miss. 2012) (an act constitutes malice if "done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant"); Cenac, 609 So.2d at 1271 (quoting passage from Prosser & Keeton, The Law of Torts § 130, 1005-1014 (5th ed.1984), explaining that a cause of action for tortious interference may be based on either improper purpose or unlawful means); Progressive Cas. Ins. Co. v. All Care, Inc., 914 So. 2d 214, 219-20 (Miss. Ct. App. 2005) (finding sufficient evidence to prove malicious intent, i.e., that the defendant's actions were calculated to cause damage and loss and were done without right or justifiable cause, where the defendant's insurance adjuster made false statements about a business that were unrelated to his duties as an insurance adjuster, which caused clients not to patronize the business).

Defendant's claims of privilege are not appropriately decided on their motions to dismiss.   See McGrath v. Empire Inv. Holdings, LLC, No. 1:11-CV-209-A-S, 2013 WL 85205, at *7 (N.D. Miss. Jan. 7, 2013 (denying a motion to dismiss and finding that the issue of privilege–whether the defendant had justifiable cause for its action–"is necessarily a fact intensive inquiry which would be inappropriate to resolve at the Motion to Dismiss stage").

The SAC alleges other specific instances where identified Defendants unsuccessfully attempted to steer identified insureds to specific shops for repairs (Doc.

87, ¶¶ 304, 311-320).   Defendants' unsuccessful attempts do not constitute tortious interference with business relations.   Mississippi law requires "actual damage and loss." and Plaintiffs have not alleged a cognizable injury in any situation where a Defendant was unsuccessful in its attempt to steer someone away from one of Plaintiffs' businesses. MBF Corp., 663 So.2d at 598,

Plaintiffs' remaining allegations of tortious interference fail for at least three related reasons.   First, they are group pleadings which this Court has previously found insufficient to state a claim for tortious interference with business relations (Doc. 82, pp. 13-14).   Second, they are conclusory and therefore, insufficient "to raise a right to relief above the speculative level."   Twombly, 550 U.S. at 555.   Third, the SAC does not contain "enough facts to state a claim to relief that is plausible on its face."   Id. at 570. Despite these deficiencies, Plaintiffs argue that they have stated a claim for tortious interference against all Defendants by alleging that when one Defendant engaged in a campaign of interference other Defendants also engaged in interference.   This assertion is itself, conclusory, implausible, and unsupported by sufficient averments of fact.

I find that with the exception of the four specific claims noted above, the SAC fails to state a cause of action for tortious interference against any Defendant.   I also find that Plaintiffs have had a sufficient opportunity to discover and allege any claims of tortious interference they have against Defendants.   Therefore, I respectfully recommend that the dismissals with respect to this count be with prejudice.

Count IV: Quantum Meruit

My prior Report and Recommendation explains that Mississippi case law sometimes uses "quantum meruit" synonymously with "quasi-contract" or contract "implied in law."   (Doc. 82, pp. 6-7).   After analyzing Plaintiffs' claim, I concluded that it

was of the quasi-contract variety since Plaintiffs had alleged that "[q]uantum meruit rests

upon the equitable principle that a party is not allowed to enrich itself at the expense of

another" and that "the law implies a promise to pay a reasonable amount for [the repairs],

even absent a specific contract therefor[]."   (Doc. 3, ¶ 114).    Since the SAC contains

identical allegations I again treat Plaintiffs' quantum meruit claim as an action based upon

a quasi contract (Doc. 87, ¶ 497).

Quantum meruit

> "applies to situations where there is no legal contract but
> where the person sought to be charged is in possession of
> money or property which in good conscience and justice he
> should not retain but should deliver to another, the courts
> imposing a duty to refund the money or the use value of the
> property to the person to whom in good conscience it ought to
> belong."

In re Estate of Fitzner, 881 So. 2d 164, 173-74 (Miss. 2003) (quoting Hans v. Hans, 482

So.2d 1117, 1122 (Miss. 1986)).   "Quantum meruit recovery is a contract remedy which

may be premised either on express or 'implied' contract, and a prerequisite to

establishing grounds for quantum meruit recovery is claimant's reasonable expectation of

compensation."   Id.   A claim for quantum meruit has four elements:

> (1) valuable services were rendered or materials furnished; (2)
> for the person sought to be charged; (3) which services and
> materials were accepted by the person sought to be charged,
> used and enjoyed by him; and (4) under such circumstances
> as reasonably notified person sought to be charged that
> plaintiff, in performing such services, was expected to be paid
> by person sought to be charged.

Id. (citing Reed v. Weathers Refrigeration & Air Conditioning, Inc., 759 So.2d 521, 525

(Miss. Ct. App. 2000)).

Under Mississippi law, "a prerequisite to establishing grounds for quantum meruit

recovery is [the] claimant's reasonable expectation of compensation."   Id. at 173.   The

amended complaint alleged that State Farm fixed the "market rates" for parts and repairs and the remaining Defendants "specifically" informed Plaintiffs that they would not pay more than State Farm pays (Doc. 3, ¶¶ 59, 80).   Plaintiffs said this conduct was "ongoing, concerted, and intentional" and had continued "over the course of several years" (Id. at ¶ 47).   The Court dismissed the quantum meruit claim, finding that "Defendants' repeated and persistent refusal to pay the amounts demanded by Plaintiffs makes unreasonable any expectation on the part of Plaintiffs that Defendants would abruptly begin paying the amounts Plaintiffs believe their services are worth."   (Doc. 82, p. 10; Doc. 83).   *Cf.* Lauderdale Cty. Sch. Dist., 24 F.3d 671, 696-97 (5th Cir. 1994) ("Quitman has refused to pay money since 1968, and it repudiated the entire agreement in 1977.   Under these circumstances,  Enterprise did not have a reasonable expectation of compensation, and therefore it should not recover on a theory of quantum meruit.").   See also City of Calhoun v. N. Ga. Elec. Membership Corp., 443 S.E.2d 469, 472 (Ga. 1994) (holding that plaintiff city "never had a reasonable expectation that" defendant would make franchise payments, where defendant "unequivocally apprised" city that it would not pay); Blue Ash Auto Body, Inc. v. Progressive Cas. Ins. Co., 2011-Ohio-5785, at ¶ 12, 2011 WL 5444201, at *3 (Ohio App. Nov. 10, 2011) (auto body shops could not demonstrate that any enrichment of insurance  company was unjust, where shops entered into agreements with insureds knowing in  advance insurance company's estimates for the work and were free to refuse to do the work).

The Court also dismissed the quantum meruit count from the amended complaint because Plaintiffs alleged the DRP[3]  agreements and "[t]he existence of an actual contract

---

[3]  "DRP" is a reference to a "direct repair program."   (Doc. 87, ¶ 120).   Many Defendants allegedly instituted DRP's for the stated purpose of benefitting customers by ensuring a pre-screened pool of reputable body shops to whom claimants could be referred (Id.).   Plaintiffs allege that in reality, Defendants

precludes any claim for unjust enrichment, which is based on a contract  implied in law." Montgomery v. CitiMortgage, Inc., 955 F. Supp. 2d 640, 656-57 (S.D. Miss. 2013); see also Powell v. Campbell, 912 So. 2d 978 (Miss. 2005) ("Unjust enrichment only applies to situations where there is no legal contract....").

Lastly, the Court noted that if Plaintiffs were unhappy with the prices Defendants were paying, they could have negotiated higher prices before performing the repairs or failing that, refused to perform  repairs for Defendants' insureds.   See Restatement (Third) of Restitution and Unjust Enrichment § 2, cmt. d ("Because contract is strongly preferred over restitution as a basis for private obligations, restitution is not usually available to a claimant who has neglected a suitable opportunity to make a contract beforehand.").

The SAC contains the same allegations the Court found deficient in the amended complaint.   Still, Plaintiffs argue that they have stated a claim for quantum meruit because the SAC avers that no Plaintiff has a binding contract with any Defendant, the DRPs offer no consideration to the Plaintiffs, and they do not assert any claim on the DRPs or the violation of any DRP term (Doc. 98, p. 36).   Then, Plaintiffs allege:

> 498. Plaintiffs have performed valuable services and expended material resources with the reasonable expectation of payment\compensation for those services and materials. This is their business.   Performing said services and expending material resources benefitted Defendants and Defendant's insured/claimants for whom Defendants are required to provide payment for repairs.
>
> 499. Defendants reserved the unilateral right to give permission for each Plaintiff to commence work until such time and place as they deemed appropriate.   Although ultimate authority for such orders lies solely with the consumer, the Defendants asserted they were entitled to certain rights and

___
employ DRP's to suppress repair costs to the detriment of Plaintiffs and their customers (Id. at ¶ 123).

privileges in advance of work actually commencing to preserve their own rights.   Defendants further interfered and inserted themselves into every aspect of the repair process.

500. Having reserved those purported rights and affirmatively extended permission and direction, the Plaintiffs were reasonably entitled to rely upon the belief an equitable contract had been formed and should be fully performed.

501. It was and has always been foreseeable the Plaintiffs were not performing labor or providing services and materials without expectation of full payment.   Defendants have acknowledged the essential elements of this cause of action and the concomitant obligation to compensate Plaintiffs by making partial payment.

502. However, Defendants have simply taken the position that full payment may not be made unless they choose to provide it, regardless of any other factor or consideration and having fully exercised the extent of their rights, they have further enriched themselves at the expense of Plaintiffs by failing to compensate for work performed and materials expended upon the receipt of the Defendants agreement work could commence.

(Doc. 87, ¶¶ 498-502).

These averments are insufficient to allege a plausible claim that Plaintiffs had a reasonable expectation of payment in excess of the amounts they actually received from Defendants.   Plaintiffs attempt to get around this problem by arguing that what Defendants are doing is raising accord and satisfaction which is an affirmative defense.   Then Plaintiffs argue that whether the amount of consideration Defendants paid was reasonable is a question for the jury.   I am not persuaded.   Construing the SAC liberally, Plaintiffs' allegations of fact remain speculative and implausible.   Each time a Plaintiff accepted a new job, it knew what the Defendant insurance company was going to pay for the repair.   Plaintiffs were free to attempt to renegotiate with Defendants or refuse the work.   What they cannot do is perform the repairs, accept the understood amount of payment, and then sue, alleging they had a reasonable expectation to be paid more.

The GEICO Defendants also argue that Plaintiffs render their services to the owners of the vehicles, not the insurance companies.   In A&E Auto Body, Inc. v. 21st Century Centennial Ins. Co., No. 6:14-cv-310-Orl-31TBS, 2015 WL 304048, at *5 (M.D. Fla. Jan. 21, 2015) the Court said:

> The efforts to state a claim in Counts I and II fail because the Plaintiffs have not conferred a benefit upon the Defendants. The Plaintiffs point to the repairs they performed, asserting that they "benefitted Defendants and Defendant's insured/claimants for whom Defendants are required to provide payment for repairs."   (Amended Complaint at 43). However, the Amended Complaint provides no support for this assertion.   The repairs at issue obviously provided a benefit to the owners of the vehicles.   But so far as the Amended Complaint discloses, the only effect of such a repair on the insurance company is the incurring of an obligation to pay for it.   *Cf.* Adventist Health System/Sunbelt, Inc. v. Medical Sav. Ins. Co., 2004 WL 6225293 at *6 (M.D. Fla. Mar. 8, 2004) (Fawsett, J.) (in unjust enrichment case, stating that "a third party providing services to an insured confers nothing on the insurer except a ripe claim for reimbursement," and citing cases).

I see no realistic way for Plaintiffs to overcome these impediments to their quantum meruit claims.   Accordingly, I respectfully recommend that this count be dismissed with prejudice.

Count V: Violation of Mississippi Code § 83-11-501

Section 83-11-501 of the Mississippi Code, entitled "Requirement of repairs at particular shop prohibited," provides:

> No insurer may require as a condition of payment of a claim that repairs to a damaged vehicle, including glass repairs or replacements, must be made by a particular contractor or motor vehicle repair shop; provided, however, the most an insurer shall be required to pay for the repair of the vehicle or repair or replacement of the glass is the lowest amount that such vehicle or glass could be properly and fairly repaired or replaced by a contractor or repair shop within a reasonable geographical or trade area of the insured.

Miss. Code. § 83-11-501.

The Court has already found that the "sole duty § 83-11-501 imposes on automobile insurance companies is to refrain from 'requir[ing] as a condition of payment of a claim that repairs to a damaged vehicle … must be made by a particular contractor or motor vehicle repair shop.'"   (Doc. 82, p. 5) (quoting Addison v. Allstate Ins. Co., 97 F. Supp. 2d 771, 773 (S.D. Miss. 2000) ("[T]he statute unambiguously forbids only the conditioning of payment upon the selection of certain body shops, not the steering of insureds toward certain shops.")).   See also Mosley v. GEICO Ins. Co., No. 3:13CV161-LG-JCG, 2014 WL 7882149, at *8 (S.D. Miss. Dec. 16, 2014) ("The plain meaning of the language of this statute prohibits an insurance company from conditioning its payment for repairs on the particular repair shop that performs the work."); Christmon v. Allstate Ins. Co., 82 F. Supp. 2d 612, 615 (S.D. Miss. 2000) ("There is nothing about the language of § 83-11-501 that is ambiguous.   The plain meaning of the language of that statute makes it clear that it is violated only if an insurance company refuses to pay for repairs to an automobile unless those repairs are made by 'a particular contractor or motor vehicle repair shop.'") (quoting Hardy Bros. Body Shop, Inc., v. State Farm Mut. Auto. Ins. Co., 848 F. Supp. 1276, 1287 (S.D. Miss. 1994)).

Despite these holdings, Plaintiffs continue to argue that § 83-11-501 "imposes a two-fold obligation upon insurers: to refrain from requiring a consumer to use a specified body shop in order to have a claim paid, and to pay for a proper and fair repair."   (Doc. 87, ¶ 506).   Plaintiffs allege that Defendants violated § 83-11-501 by requiring "known customers to have their vehicles repaired at body shops explicitly selected by the respective insurer," and by failing to "pay for a proper and fair repair" by utilizing used or recycled parts, requiring shops to purchase the least expensive parts, and refusing to fully

pay for necessary and required procedures to return a vehicle to its pre-accident condition (Id. at ¶¶ 507-09).   Based upon the language of the statute, I respectfully recommend the Court reject Plaintiffs' argument that § 83-11-501 imposes an obligation to pay for a proper and fair repair.

There are two allegations in the SAC that state a cause of action for a violation of the statute.   The first concerns customer Kerri Mitchell.   *See* discussion *supra*.   The second is

> 312. State Farm told consumer Lauren Inman if she went to the shop she had chosen for repairs, Plaintiff Walkers, that she would have to pay more, that repairs would take longer and Walker's wasn't on their preferred list.   Ms. Inman was also told she should have used State Farm's preferred towing service and preferred rental car company and it was inferred that because Ms. Inman had not utilized the "preferred" providers, State Farm was not going to pay the claim.   State Farm further inferred that if she insisted on using Walker's for repairs, State Farm would not pay the claim.   Ms. Inman used Walker's Collision anyway.

(Doc. 87, ¶ 312).

The next question is whether the statue provides a private right of action.   Until now, I have not analyzed this issue.   No court sitting in Mississippi has ever concluded that a private right of action does or does not exist under § 83-11-501.[4]   This leads Plaintiffs to conclude that they can bring their claims (Doc. 98, pp. 35-36).

In Mississippi "[t]he general rule for the existence of a private right of action under a statute is that the party claiming the right of action must establish a legislative intent,

---

[4] Other courts have declined to decide whether § 83-11-501 creates a private cause of action, see Mosley, 2014 WL 7882149, at *8; Christmon, 82 F. Supp. 2d at 615 n.1, or determined that the plaintiff failed to establish its claim without considering whether a private cause of action exists.   See Addison, 97 F. Supp. 2d at 773.

express or implied, to impose liability for violations of that statute." Doe v. State ex rel.

Miss. Dep't of Corr., 859 So. 2d 350, 355 (Miss. 2003):

> "To determine whether a statute creates a private right of
> action in favor of a particular plaintiff, a court must analyze the
> statute itself and any relevant legislative history.   The focal
> point is the legislative body's intent in enacting the statute.
> Unless the legislative intent can be inferred from the language
> of the statute, the statutory structure, or some other source,
> the essential predicate for implication of a private remedy
> simply does not exist."

Id. at 356 (quoting Hodgson v. Miss. Dep't of Corr., 963 F. Supp. 776, 791 (E.D. Wis.

1997)).   See also Allstate Life Ins. Co. v. Parnell, 292 F. App'x 264, 276 (5th Cir. 2008).

The language used by the Mississippi legislature does not expressly or impliedly create a

private right of action, or mention recourse by the general public or potential victims.

Therefore, I find that Plaintiffs do not have a private right of action under § 83-11-501.

My conclusion is reinforced by Miss. Code § 83-1-17 which states that "[c]ompliance with

the provisions of this title as to … prohibitions … by and upon foreign insurance companies

or other insurers may be enforced by the commissioner by suit in the name of the state."

This provision leads me to conclude that the Mississippi legislature intended for the

insurance commissioner, not private citizens, to enforce the statute.   Accordingly, I

respectfully recommend that this count be dismissed with prejudice.

Claim Preclusion (Res Judicata) and Collateral Estoppel

Plaintiffs Clinton Body Shop, Inc., and Clinton Body Shop of Richland, Inc.

(collectively "Clinton") filed a lawsuit against GEICO Insurance Company, Progressive

Insurance Company, and Direct General Insurance Company in the Circuit Court of Hinds

County, Mississippi (the "Mississippi Case").   Clinton's complaint included claims of

tortious interference with contract and business relationships, unjust enrichment, and

violations of § 83-11-501 (Doc. 96-1).   The defendants removed the Mississippi Case to the United States District Court for the Southern District of Mississippi, Northern Division, Case No. 3:13-CV-161-LG-JCG (Docs. 96-1; 98, p. 39).   On December 16, 2014, the district court granted the defendants' motions for summary judgment on all counts (Doc. 96-1).   Clinton did not appeal (Doc. 96, p. 3).   The Progressive and GEICO Defendants along with Defendant Direct General Insurance Company of Mississippi argue that Clinton's pending state court claims against are barred under the doctrines of claim preclusion (res judicata) and issue preclusion (collateral estoppel) because they were already adjudicated in the Mississippi Case (Docs 93; 94, pp. 2-5; 96, pp. 2-4).

The Eleventh Circuit has held "that federal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction." CSX Transp., Inc. v. Brotherhood of Maintenance of Way Employees, 327 F.3d 1309, 1316 (11th Cir. 2003).   The CSX court explained: "'Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit.   There are several prerequisites to the application of collateral estoppel: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.'"   Id. (quoting I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1549 (11th Cir. 1986)).   "'Collateral estoppel ... has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing

needless litigation.'" Id. (quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 59 L.Ed.2d 552 (1979)).

Plaintiffs contend that the doctrine of claims preclusion does not apply because the defendants in the Mississippi Case and this case are different.   Based on this assertion, they argue that the subject matter of the two cases is necessarily different (Doc. 98, pp. 40-42).   GEICO Insurance Company, Progressive Insurance Company, and Direct General Insurance Company were named defendants in the Mississippi Case.   None of them are parties to this case.   But, in footnote one of his decision, the district judge in Mississippi wrote:

> Plaintiffs named "Progressive Insurance Company" and "GEICO Insurance Company" as defendants, but those are not entities.   The various Progressive and GEICO entities who are licensed to do business in Mississippi responded to the Complaint, and the Court will hereafter refer to them simply as "Progressive" and "GEICO."

(Doc. 96-1, p. 2, n. 1).   According to the SAC, the Progressive and GEICO Defendants are insurance companies which provide private passenger automobile insurance to consumers in the state of Mississippi (Doc. 87, ¶¶ 52, 55).   Accepting the truth of these averments for purposes of the motions to dismiss, I find, based upon footnote one, that the decision in the Mississippi Case applies to the Progressive and GEICO Defendants.

Defendant Direct General Insurance Company of Mississippi asserts that it and Direct General Insurance Company are the same entity (Doc. 96, pp. 2-3).   But, Plaintiffs allege that the two companies are separate and distinct, incorporated in different states, and hold separate licenses to sell insurance in Mississippi (Doc. 98, p. 41).   Because Direct General Insurance Company of Mississippi has not disputed these assertions I find, for purposes of the motions to dismiss, that Direct General Insurance Company of

Mississippi and Direct General Insurance Company are different, and respectfully recommend that Direct General Insurance Company of Mississippi's motion to dismiss based upon claim preclusion and/or collateral estoppel be denied.

Plaintiffs insist that there is not a complete identity of the causes of action between this case and the Mississippi case.   Applying the federal test, the question is whether the issues at stake in this case and the Mississippi Case are identical.   Plaintiffs admit that "some of the causes of action asserted in the present case" are the same as those made in the Mississippi Case (Id. at 41).   But they argue, there are other claims that are unique to each case.   The other claims Plaintiffs are referring to are their antitrust claims in this action, which Clinton did not bring in the Mississippi Case, and claims for defamation, oppression, constructive trust, conversion, intentional and negligent infliction of emotional distress, tortious interference with contract, and quasi estoppel, which Clinton brought in the Mississippi Case but which are not included in the SAC.   So, while Plaintiffs' contention is true, it has no bearing on Progressive and GEICO's motions to dismiss Clinton's claims of tortious interference with business relations, quantum meruit, and violations of Mississippi Code § 83-11-501 alleged in the SAC.

In the Mississippi Case, Clinton complained that GEICO and Progressive tortiously interfered with its business relations (Doc. 96-1, p. 23).   In granting summary judgment for GEICO the district court said "[t]he plaintiffs have failed to establish any of the elements of tortious interference with a contract or tortious interference with business relations with respect to GEICO."   (Id. at 29).   Concerning Progressive, the district judge found that Clinton "failed to demonstrate that any of their contracts with their customers were not performed because of some unlawful action on the part of Progressive.   Nor have they demonstrated that Progressive willfully and unjustifiably caused potential customers to

take their business elsewhere with the unlawful purpose of causing damage and loss to the plaintiffs."   (Id. at 33).

Although Clinton categorized one of its claims against Progressive and GEICO as "unjust enrichment," Plaintiffs now admit it was an action for quantum meruit (Doc. 98 at 42).   This is borne out by the discussion in my last Report and Recommendation of why Plaintiffs' unjust enrichment and quantum meruit claims in their amended complaint were redundant (Doc. 82 at 7-9).

In the Mississippi Case, the court said "plaintiffs do not cite any case in which a court has held that an insurance company was unjustly enriched because it failed to pay in full the charges incurred by an insured at a repair shop (or any analogous context), and the Court is not aware of one."   (Doc. 96-1 at 13).   The court also said: "The plaintiffs have not demonstrated a legal basis on which the Court could impose the doctrine of unjust enrichment.   Summary judgment will be granted in favor of defendants on this claim."   (Id., at 14).   Therefore, I find that the doctrine of claims preclusion applies to bar Clinton's quantum meruit claims against Progressive and GEICO in this action.

The court in the Mississippi Case evaluated Clinton's claim under Mississippi Code § 83-11-501 and like this Court, found that the statute means an insurance company cannot condition "its payment for repairs on the particular repair shop that performs the work."   (Id., at 20).   The court entered summary judgment for Progressive and GEICO because there was no evidence that they required their insureds to have repairs made at particular shops (Id.).   The same issue is presented by Clinton's statutory claim against Progressive and GEICO in the SAC.

For these reasons, I find that Clinton's state law claims against the GEICO and Progressive Defendants are barred by the doctrine of claim preclusion, and respectfully recommend that they be dismissed with prejudice.

## IV. Recommendation

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that with the exception of Plaintiff's claims for tortious interference with business relations by (1) Plaintiff Alexander Body Shop, LLC, against State Farm; (2) Plaintiff Hypercolor Automotive Reconditioning, LLP, d/b/a AutoWorks Collision Specialists, LLP, against Progressive; and (3) Plaintiff Walkers Collision Center, Inc., against Progressive, all of Plaintiffs' state law claims be dismissed with prejudice.

## V. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on February 17, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record
Any Unrepresented Parties