IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION

| | |
|---|---|
| CAPITOL BODY SHOP, INC., *et al.*, | \* **DISPOSITIVE MOTION** |
| | \* |
| PLAINTIFFS, | \* MDL Docket No. 2557 |
| | \* |
| v. | \* Case No. 6:14-cv-06000-GAP-TBS |
| | \* |
| STATE FARM MUTUAL AUTOMOBILE | \* Originally filed in the Southern |
| INSURANCE COMPANY, *et al.*, | \* District of Mississippi |
| | \* |
| DEFENDANTS. | \* |

### DEFENDANT STATE FARM'S PARTIAL OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendants State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively "State Farm") respectfully object in part to Magistrate Judge Thomas B. Smith's Report and Recommendations (Doc. 115) ("R&R") for two limited reasons (i) it incorrectly concluded that the allegations regarding Gail and Martin Hampton in Plaintiffs' Second Amended Complaint ("SAC") (Doc. 87) were sufficient to state a claim for tortious interference with business relations against State Farm under Mississippi law (R&R at 9-10); and (ii) it erroneously found that paragraph 312 of the SAC sufficiently alleges a violation by State Farm of Miss. Code § 83-11-501 (*id*. at 18).[1]  State Farm requests that the Court otherwise adopt the R&R and dismiss Plaintiffs' SAC in its entirety, with prejudice.

---

[1] A District Court reviews *de novo* any portion of a magistrate judge's disposition of a dispositive motion to which a party has properly objected.  Fed. R. Civ. P. 72(b)(3); *Ekokotu v. Fed. Express Corp.*, 408 F. App'x 331, 336 n.3 (11th Cir. 2011).

1

104733900.1

I.  **THE MAGISTRATE JUDGE INCORRECTLY FOUND THAT THE SAC'S ALLEGATIONS REGARDING GAIL AND MARTIN HAMPTON WERE SUFFICIENT TO STATE A CLAIM AGAINST STATE FARM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**

As the Magistrate Judge's R&R correctly states, Plaintiffs are required to plead four elements in each claim for tortious interference: "(1) [t]he acts were intentional and willful; (2) [t]he acts were calculated to cause damage to the plaintiffs in their lawful business; (3) [t]he acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); [and] (4) [a]ctual damage and loss resulted." R&R at 6 (citing *Biglane v. Under the Hill Corp.*, 949 So. 2d 9, 16 (Miss. 2007)). Plaintiffs also "must support these elements, including malice, with sufficient plausible factual allegations." R&R at 7 (citing *BC's Heating & Air & Sheet Metal Works, Inc. v. Vermeer Mfg. Co.*, No. 2:11-cv-136-KS-MTP, 2012 WL 642304, at *3 (S.D. Miss. Feb. 27, 2012)).

Although Mississippi permits a tortious interference claim for *unlawfully* diverting prospective customers (*see, e.g.*, *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998)), Mississippi courts, including the Mississippi Supreme Court, have drawn a clear line and "have recognized the right to engage in legitimate competition," holding that "[i]t is proper to engage in competition for prospective gain, as long as tortious acts are not employed to further that gain." *MBF Corp. v. Century Bus. Commc'ns, Inc.*, 663 So. 2d 595, 598 (Miss. 1995); *see also id.* (It is "not a tort to fairly compete with a business rival for a prospective customer. A competitor should feel free to acquire business for himself by fair and reasonable means.") (citation omitted). "'[A]ggressive marketing,'" even when "'described as playing hardball,'" is "'not illegal.'" *Hightower v. Aramark Corp.*, No. 1/10-

CV-166-SA-DAS, 2012 WL 827113, at *6-7 (N.D. Miss. Mar. 9, 2012) (citation omitted), *aff'd*, *Hightower v. Aramark Educ. Servs., L.L.C.*, 537 F. App'x 489 (5th Cir. 2013); *see also Vestal v. Oden*, 500 So. 2d 954, 956 (Miss. 1986) (a tortious interference claim cannot stand "if the interference was 'undertaken by someone in the exercise of [a] legitimate interest or right, which constitutes 'privileged interference'") (citations omitted). Thus, under Mississippi law, a claim for tortious interference requires "'bad acts exceeding the realm of legitimate competition'" which were "'committed without legal or social justification.'" *Id.* at *5 (citations omitted).

In light of this Mississippi precedent, the Magistrate Judge incorrectly concluded that the SAC's allegations regarding Gail and Martin Hampton were sufficient to state a claim for tortious interference with business relations against State Farm under Mississippi law. (R&R at 9-10). Those allegations, however, do not meet the essential elements that the conduct alleged was "'calculated to cause damage to the plaintiffs in their lawful business'" and was "'done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice).'" *Biglane*, 949 So. 2d at 15-16 (citation omitted). Plaintiffs' allegations, moreover, do not show an *unlawful* diversion of prospective customers (*see Par Industries,* 708 So. 2d at 48); an employment of "tortious acts" (*MBF Corp.,* 663 So. 2d at 598); or "'bad acts'" "'committed without legal or social justification.'" (*Hightower,* 2012 WL 827113, at *5).

The allegations relied by the Magistrate Judge are as follows:

305. In early 2014, Gail Hampton notified State Farm she was taking her vehicle to Plaintiff Alexander's Body Shop for repairs. State Farm told her she was <u>required</u> to take her vehicle to an approved shop for an estimate before taking the vehicle to Alexander's for repairs. The two shops State Farm said

3

104733900.1

she could take her vehicle to for an estimate were far away, one in Jackson, Mississippi, and the other in Louisiana. Ms. Hampton argued the distance and insisted she wanted to go to Alexander's but State Farm told her she had no choice but to comply. Ms. Hampton took her vehicle to the Jackson shop as it was closer than the shop in another state and ended up leaving the vehicle there for repairs because the distance was so great, took up so much time and effort and she was a senior citizen. Ms. Hampton would have consummated the business with Alexander's but for State Farm's illegal insistence she had to take her vehicle to another shop for an estimate because Will Alexander, owner/operator of Alexander's Body Shop, is Ms. Hampton's nephew.

306. In a separate incident in 2014, State Farm told Martin Hampton he was required to take his vehicle to an approved shop for an estimate before he was allowed to go to Alexander's Body Shop for repairs. Mr. Hampton argued with State Farm, telling State Farm he only wanted to go to Alexander's but State Farm said Mr. Hampton had no choice. Mr. Hampton complied as he was told he had no choice. Because of the distance of the State Farm shop he was compelled to go to, the time, effort and difficulty, Mr. Hampton capitulated and left his vehicle for repairs at the State Farm preferred shop. Mr. Hampton would have consummated the business with Alexander's but for State Farm's illegal insistence he had to take his vehicle to another shop for an estimate because Will Alexander, owner/operator of Alexander's Body Shop, is Mr. Hampton's nephew.

(R&R at 8 (quoting SAC ¶¶ 305-06 (emphasis in original)).

According to the R&R, these paragraphs allege that State Farm "successfully steered someone away from one of Plaintiffs' repair shops." (R&R at 9.) However, the allegations make clear that State Farm required only that the customers go to a particular shop for an *estimate* and that the customers were informed that they could then go to Plaintiff Alexander's for repairs. As paragraph 305, quoted above, of the SAC states, "State Farm told [Gail Hampton] that she was *required* to take her vehicle to an approved shop *for an estimate* before taking the vehicle to Alexander's for repairs." (SAC ¶ 305 (second emphasis added).) Paragraph 306, also quoted above, makes the same allegation: "State Farm told

4

Martin Hampton he was required to take his vehicle to an approved shop for an estimate before he was allowed to go to Alexander's Body Shop for repairs." (*Id.* ¶ 306.)

Contrary to the R&R (at 9), this is not "steering," which is defined by Mississippi statute as "requir[ing] as a condition of payment of a claim that *repairs* to a damaged vehicle, including glass repairs or replacements, must be made by a particular contractor or motor vehicle repair shop." Miss. Code § 83-11-501.[2] As pointed out in State Farm's motion to dismiss, although Plaintiffs conclusorily allege that it is "illegal" for State Farm to require an insured to take his or her vehicle to another shop for an estimate (SAC ¶¶ 305, 306), Plaintiffs do not (and cannot) identify any Mississippi statute or regulation prohibiting the practice of requiring an insured to bring his or her car to a DRP shop for an estimate. (*See* Doc. 90 at 22.) Indeed, the Mississippi Insurance Department recognizes that an insurer will typically obtain its own estimate for an insured's car repair, and the body shop will produce its own estimate, before repairs are done.[3] Plaintiffs make no allegation that State Farm told

---

[2] The website of the Mississippi Insurance Department includes a statement on "Steering," which states that "[u]nder Mississippi law, an insurance company may not dictate to you where you must have your repairs made. An insurance company may recommend that repairs be made at a designated repair facility where they have a contractual relationship; however, payment shop where they have a contractual relationship; however, payment of the claim may not be condition on the use of a particular repair facility. Also, an insurance company cannot refuse to pay a claim because the repairs were made a particular repair facility." *See* http://www.mid.ms.gov/consumers/auto-liability-insurance.aspx#str (visited Feb. 26, 2016).

[3] *See* http://www.mid.ms.gov/consumers/auto-liability-insurance.aspx#atbp (visited Feb. 26, 2016) ("In preparing an estimate, an insurance company will base the amount it will cost to properly repair the vehicle on the insurance company's set hourly rate pursuant to policy terms. This estimate will be provided to the policyholder before repairs are made. . . . A policyholder may choose to have the repairs made at a repair facility that charges more than what the insurance company has agreed to pay. Insurance companies do not set repair facility hourly rates so there may be a difference between the two rates. In that instance,

104733900.1

the Hamptons it would not pay for repairs if they chose to have them done by Alexander's. (*See* SAC ¶¶ 305-306.)

An insurer's requiring an insured to bring his car in for inspection of the damage and an estimate is an accepted practice that does not constitute steering or tortious interference. It is not prohibited by Mississippi law. Plaintiffs' allegations regarding that practice do not include any facts that would support the required elements of a tortious interference claim that State Farm's conduct in requiring the Hamptons to get repair estimates from a facility approved by State Farm was "'calculated to cause damage to the plaintiffs in their lawful business,'" as opposed to fulfilling a legitimate business need of State Farm, or was "'done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice).'" *See Biglane*, 949 So. 2d at 15-16 (citation omitted). Plaintiffs also allege no illegal or tortious acts, as required by Mississippi courts. *See MBF Corp.*, 663 So. 2d at 598. To the contrary, the business justification for the practice is clear. An insurer is entitled to have its own inspection done of the damage to an insured's vehicle and to provide the policyholder with an estimate reflecting the insurer's "set hourly rate pursuant to policy terms." *See* note 3 *supra*. The fact that the customers chose, for convenience, to leave their cars with the shop where an estimate was obtained does not transform State Farm's lawful requirement that they go to an approved shop for an estimate into tortious interference.

---

either the repair facility will agree to make the repairs for the amount in the insurance company's estimate or the policyholder will have to pay for the difference.")

Likewise, the R&R errs in holding that Plaintiffs' conclusory, generalized allegations that "Defendants" acted maliciously and without a justifiable cause is insufficient to support the element of malice. (R&R at 9.) The Report and Recommendation points to the generalized, group allegation that "Defendants would have paid the same amount for repairs regardless of who performed them, so the only reasonable explanation for Defendants' actions was to punish Plaintiffs and cause them damage." (*Id.*; *see* SAC ¶ 326.) This conclusory allegation is improper group pleading. It is also flatly contradicted by other allegations in the SAC. *See, e.g.,* SAC ¶ 68 (the purpose of Defendant's alleged steering is to "substantially increas[e] their own profits by steering customers away from Plaintiffs' business to body shops which comply with the Defendants' fixed prices."); *id.* ¶ 298 (referring to "disfavored repair shop[s]" that "fail[] to comply with fixed prices"; ¶ 301 (steering results in "increased company profits").

More importantly, Plaintiffs' allegation that purported "steering" is "financially pointless" and "does not benefit a demonstrably legitimate interest of the Defendants" (*id.* ¶ 326) plainly has no relevance to Plaintiff Alexander's allegation that State Farm told the Hamptons that they were "required to take [their] vehicle[s] to an approved shop before taking the vehicle to Alexander's for repairs." (SAC ¶¶ 305, 306.) Not only is that practice *not* steering, but Plaintiffs do not allege that an insurer's requiring an estimate from an approved shop has no business purpose. As the Mississippi Insurance Department's website makes clear, it is expected and entirely reasonable that insurance companies will obtain their own inspections and estimates for covered auto repairs before the repairs are done and that an insurance company's estimate will not necessarily match the estimate provided by a repair

7

shop. *See* note 3 *supra.* In Mississippi, insurers are permitted by statute to pay "the lowest amount that [a] vehicle . . . could be properly and fairly repaired or replaced by a contract or repair shop" within the relevant geographical area, consistent with policy provisions. Miss. Code § 83-11-501. Thus, an insurer is not required to simply accept a body shop's repair estimate and hourly rates, but is allowed to have a body shop of its own choice inspect the vehicle and produce an estimate. Holding that a tortious interference claim may be based upon allegations such as those in the SAC regarding the Hamptons is contrary to Mississippi law.

Accordingly, for these reasons, the Magistrate Judge incorrectly found that Plaintiffs' allegations regarding Gail and Martin Hampton were sufficient to state a claim for tortious interference against State Farm. Therefore, Plaintiffs' entire claim of tortious interference with respect to State Farm should be dismissed with prejudice.

## II. THE MAGISTRATE JUDGE ALSO ERRED IN RULING THAT PARAGRAPH 312 OF THE SAC SUFFICIENTLY ALLEGES A VIOLATION BY STATE FARM OF MISS. CODE § 83-11-501

State Farm further objects to the Magistrate Judge's incorrect statement that paragraph 312 of the SAC "state[s] a cause of action for a violation of [section 83-11-501]." R&R at 18. Although the Magistrate Judge recommended dismissal of Plaintiffs' claims under section 83-11-501 on the grounds that there is no private right of action under that statute (*id.* at 18-19), State Farm asks the Court to correct Magistrate Judge's statement that paragraph 312 sufficiently alleged a violation of the statute. If allowed to stand, the Magistrate Judge's incorrect finding might harm State Farm's reputation or Plaintiffs may attempt to use that finding against State Farm in the future.

Paragraph 312 alleges as follows:

State Farm told consumer Lauren Inman if she went to the shop she had chosen for repairs, Plaintiff Walkers, that she would have to pay more, that repairs would take longer and Walker's wasn't on their preferred list. Ms. Inman was also told she should have used State Farm's preferred towing service and preferred rental car company and *it was inferred* that because Ms. Inman had not utilized the "preferred" providers, State Farm was not going to pay the claim. State Farm further *inferred* that if she insisted on using Walker's for repairs, State Farm would not pay the claim. Ms. Inman used Walker's Collision anyway.

(SAC ¶ 312 (emphasis added).)

This paragraph fails to allege that State Farm did not pay for Ms. Inman's repair at Plaintiff Walker's Collision or for the towing and car rental services used by Ms. Inman. It also fails to plausibly allege that State Farm actually told Ms. Inman that it would not pay for her repairs or other covered policy benefits. To the contrary, Plaintiffs' repeated use of the word "inferred" strongly suggests that State Farm made no such statement to Ms. Inman, particularly when combined with the absence of any allegation that State Farm did not pay. These allegations are simply insufficient to allege that State Farm "require[d] as a condition of payment of a claim that repairs to [Ms. Inman's] damaged vehicle . . . must be made by a particular contractor or motor vehicle repair shop." Miss. Code § 83-11-501.

Accordingly, State Farm respectfully requests the Court to correct the Magistrate Judge's erroneous finding that paragraph 312 of the SAC sufficiently alleges a violation by State Farm of Miss. Code § 83-11-501.

## II.   CONCLUSION

For the reasons stated above, State Farm respectfully submits that the Magistrate Judge erred in concluding that Plaintiffs' allegations regarding Gail and Martin Hampton

9

(R&R at 9-10) were sufficient to state a claim for tortious interference against State Farm. Therefore, Plaintiffs' claim entire claim of tortious interference with respect to State Farm should be dismissed with prejudice. The Court should also correct the Magistrate Judge's erroneous conclusion that paragraph 312 of the SAC sufficiently alleges a violation by State Farm of Miss. Code § 83-11-501.

Dated:  March 2, 2016                               Respectfully submitted,

*/s/ Johanna W. Clark*
Johanna W. Clark
CARLTON FIELDS JORDEN BURT, P.A.
450 S. Orange Ave., Suite 500
Orlando, Florida 32801
Telephone: (407) 849-0300
Facsimile: (407) 648-9099
Email: jclark@carltonfields.com

Michael L. McCluggage
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Telephone: (312) 660-7600
Facsimile: (312) 692-1718
E-mail: mmcluggage@eimerstahl.com

Michael P. Kenny
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: 404-881-7000
Facsimile: 404-881-7777
Email: mike.kenny@alston.com

*Attorneys for Defendants State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company*

10

104733900.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of March, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

*/s/ Johanna W. Clark*
Johanna W. Clark