# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

CAPITOL BODY SHOP, INC., et al.,

    Plaintiffs,

v.                                                                                Case No: 6:14-cv-6000-Orl-31TBS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, et al.,

    Defendants.

## ORDER

This matter comes before the Court on the Report and Recommendation (Doc. 115) filed by Magistrate Judge Smith regarding the motions to dismiss (Doc. 89-90, 92-94) filed by various Defendants. After considering the motions, the Plaintiffs' response, and replies filed by a number of Defendants, Judge Smith recommended that all of the Plaintiffs' state law claims (aside from four tortious interference claims, which are described below) be dismissed with prejudice. (Doc. 115 at 24). Objections to the Report and Recommendation were filed by the Plaintiffs (Doc. 121) and a number of Defendants (Doc. 117-119). The Defendants also filed responses (Doc. 122-26) to the Plaintiffs' objection. Upon *de novo* review, the Court concurs with the recommendation of the Magistrate Judge except in one respect.

### I.    Background

The instant case is one of 24 similar actions, consolidated for pretrial purposes, in which auto repair shops in a particular state have accused insurance companies of violation Section I of the Sherman Antitrust Act and various state laws by conspiring to suppress the amounts they are obligated to pay for automobile repairs. On February 27, 2015, the Court dismissed the claims

asserted in the Plaintiffs' Amended Complaint (Doc. 3).   Subsequently, the Plaintiffs filed a Second Amended Complaint (Doc. 87) (henceforth, the "SAC").   In that document, the Plaintiffs asserted two claims for alleged violations of the Sherman Act (Counts I and II), plus state law claims for tortious interference with business relations (Count III), quantum meruit (Count IV), and violation of Mississippi Code § 83-11-501 (Count V).   The Sherman Act claims were resolved via a separate order (Doc. 116).

## II.    Tortious Interference

In Count III, the Plaintiffs contend that the Defendants tortiously interfered with their prospective business relationships by "steering" insureds who intended to have repairs performed by one of the Plaintiffs to a competing shop.   Under Mississippi law, there are four elements necessary to prove a claim of tortious interference with a business relationship:

> (1) The acts were intentional and willful;
>
> (2) The acts were calculated to cause damage to the plaintiffs in their lawful business;
>
> (3) The acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice);
>
> (4) Actual damage and loss resulted.

*Biglane v. Under The Hill Corp.*, 949 So.2d 9, 16 (Miss. 2007) (quoting *MBF Corp. v. Century Bus. Commc'ns, Inc.*, 663 So.2d 595, 598 (Miss. 1995)).

After reviewing the Plaintiffs' factual allegations in Count III, Judge Smith determined that most were too vague and conclusory to state a claim.   The Plaintiffs complain that they are not required to provide particularized pleadings, that it is enough to generally aver (as they have in the SAC) that "each and every Defendant has interfered with the business prospects of each and every Plaintiff."   (Doc. 121 at 2).   The Plaintiffs are incorrect.   Although the Plaintiffs are not required

to provide every detail about every transaction, they must provide more than just a "formulaic recitation of the elements of the cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   As Judge Smith properly concluded, group pleading and conclusory allegations will not suffice to state a claim here.

Judge Smith found four instances where the Plaintiffs had alleged that a Defendant had successfully steered its insured away from one of the Plaintiffs' shops; he concluded that, as to those four instances, the individual Plaintiff whose prospective customer had been steered had stated a claim against the individual Defendant that had done the steering.   (Doc. 115 at 7-10). The four instances of successful steering identified by Judge Smith involved State Farm insureds Gail Hampton and Martin Hampton, and Progressive insureds Swatiben Desai and Kerri Mitchell. (Doc. 115 at 8-9).[1]   The State Farm Defendants and the Progressive Defendants object to Judge Smith's finding, arguing that the allegations regarding the Hamptons, Desai, and Mitchell are insufficient to state a claim.   After *de novo* review, the Court agrees with these Defendants.

To state a claim for tortious interference, the Plaintiffs must allege that the acts were done with malice – that is, with the unlawful purpose of causing damage and loss.   The Plaintiffs appear to recognize this, as they generally allege that the purpose of all of the alleged steering/interference

> was twofold: to punish the specific Plaintiffs who complained about or refused to submit to the various oppressive and unilateral price ceilings the Defendants were enforcing upon them, and to direct potential customers of the Plaintiffs to other vendors who would comply with the maximum price ceilings unilaterally imposed by the Defendants.

(SAC at 97).

---

[1] In the SAC, "State Farm" and "Progressive" are used to refer to multiple Defendants that have either State Farm or Progressive as part of their names, respectively.

It is doubtful that the second of these two alleged purposes would suffice to establish malice under Mississippi law, as it shows the steering being done to benefit a Defendant (by keeping prices under the "ceiling") rather than it being done to cause damage and loss to a Plaintiff.   However, the point is moot, because as to the four instances of successful steering identified by Judge Smith, neither of these purposes could apply.   There are no allegations that these Plaintiffs had complained about the payment ceilings set by the Defendants, so punishment could not have been the driving force behind the steering.   And the Plaintiffs allege that it was a "foregone conclusion" that the Defendant would pay the same amount for the repair at their shops or any competing shop, SAC at 97, so compliance with maximum price ceilings could not have been an issue, either.   Because the Plaintiffs in these four instances have failed to properly allege that their customers were steered to competing shops for the purpose of damaging them – as opposed to the steering simply having that effect – they have failed to state a claim for tortious interference with business relations.   *See BC's Heating & Air & Sheet Metal Works, Inc. v. Vermeer Mfg. Co.*, 2012 WL 642304, at *3 (S.D. Miss. Feb. 27, 2012) (dismissing tortious interference claim because allegation that defendants sold plaintiff drill that failed to perform as promised, resulting in harm to plaintiff's business, did not reflect "the sort of intentional, calculated effort – or malice – that is required for a claim of tortious interference with business relations.").

The Plaintiffs argue that, in addition to the instances discussed above, Judge Smith should have found that the allegations in the SAC regarding Laura Johnson, Jamie Allen, Lara McFarland, and someone identified only as "Mrs. Williams" were sufficient to state a tortious interference claim.   However, as to Johnson, the pleadings show that State Farm informed her that she could go to her preferred shop.   As to McFarland, Allen, and Williams, there is no allegation

that they had their repairs performed somewhere other than the Plaintiff's shop that they originally intended to patronize.  (SAC at 59-61).   Moreover, just as was the case with regard to the Hamptons, Desai, and Mitchell, the allegations involving Johnson, Allen, McFarland, and Williams fail to properly allege malice.   The Plaintiffs' tortious interference claim will be dismissed with prejudice.

### III.     Quantum Meruit claim

In Count IV, the Plaintiffs attempted to assert a quantum meruit claim based on the Defendants' refusal to pay what the Plaintiffs believed to be the true market price for the repairs they performed.   Under Mississippi law, a prerequisite to establishing grounds for quantum meruit recovery is "claimant's reasonable expectation of compensation." *In re Estate of Meisner*, 881 So. 2d 164, 173 (Miss. 2003).   Judge Smith concluded that, at the time each Plaintiff performed a repair, it knew how much the Defendant insurer was willing to pay and therefore could not have had a reasonable expectation of being paid more.  (Doc. 115 at 15).   Judge Smith recommended that the quantum meruit count be dismissed with prejudice.

The Plaintiffs do not dispute the determination that they were aware of the price each Defendant was willing to pay prior to starting a repair for that Defendant.   Instead, the Plaintiffs attempt to characterize Judge Smith's analysis as being based on the assertion by the Defendants of an affirmative defense, such as waiver or estoppel.   They object that they are not required to anticipate affirmative defenses in their pleading.  (Doc. 121 at 8-9).   But Judge Smith's conclusion had nothing to do with affirmative defenses.   A reasonable expectation of compensation is a requirement of any quantum meruit claim.   A plaintiff who knows, before the work is done, that a customer is only willing to pay a certain price cannot simply do the work and

- 5 -

reasonably expect to be paid more than that price.   Judge Smith's recommendation will be adopted, and the quantum meruit claim will be dismissed with prejudice.[2]

### IV.   Statutory claim

The Plaintiffs contend that Mississippi Code § 83-11-501 prohibits insurers from requiring that their insureds get their automobile repairs performed at a particular shop and requires that insurers pay for a proper and fair repair of the insured's vehicle.   (SAC at 98-99).   In Count V of the SAC, they asserted a claim against the Defendants for allegedly violating these obligations. Judge Smith found that the statutory provision did not impose a duty upon insurers to pay the price of a "proper and fair repair" and, in addition, it did not provide for a private right of action.   (Doc. 115 at 18-19).

The provision at issue states:

> No insurer may require as a condition of payment of a claim that repairs to a damaged vehicle, including glass repairs or replacements, must be made by a particular contractor or motor vehicle repair shop; provided, however, the most an insurer shall be required to pay for the repair of the vehicle or repair or replacement of the glass is the lowest amount that <u>such vehicle or glass could be properly and fairly repaired</u> or replaced by a contractor or repair shop within a reasonable geographical or trade area of the insured.

Miss. Code § 83-11-501 (emphasis added).   The Plaintiffs argue that, due to the underlined text, "the statute clearly states an insurer must pay for a proper and fair repair."   (Doc. 121 at 14). This is not a fair reading of the statute.   The statute imposes a ceiling on the price insurers may be required to pay for a repair.   It does not set a floor, either as to price or quality.   This conclusion is reinforced by the absence of Mississippi cases interpreting the statute in such a fashion.

---

[2] In addition, the Court notes that the Plaintiffs have not objected to Judge Smith's conclusion that, because a quantum meruit claim requires that the services and materials at issue be rendered to the party now being sued, the fact that the Plaintiffs repaired the vehicles of the Defendants' insureds, rather than the Defendants, is also fatal to Count IV.   (Doc. 115 at 16).

As a question of first impression, Judge Smith analyzed the statute to determine whether it provided for a private right of action.[3] He found that the statute did not explicitly or impliedly create such a right; he also found that Miss. Code § 83-1-17 provided for actions by "the commissioner" to enforce compliance by insurance companies, but made no mention of actions by other entities. (Doc. 115 at 19). Based on this, he concluded that the Mississippi legislature had not intended for Section 83-1-501 to be enforced by private suits. (Doc. 115 at 19).

The Plaintiffs objected to Judge Smith's determination that Section 83-1-501 did not provide a private right of action on the basis of four cases, filed by individuals, in which the Court "permitted claims of violation of this statute to go forward." (Doc. 121 at 14-15).[4] However, the Plaintiffs do not cite, and the Court's research has not uncovered (in the four cited cases or any others) any instance where the court actually addressed the question of whether private citizens could file suits to enforce Section 83-1-11. (In fact, the court in *Christmon*, 82 F.Supp.2d at 615 n.1, recognized that the statute did not expressly provide for a private right of action but assumed it did solely for purposes of resolving the motion to dismiss.) Aside from citing these cases, the

---

[3] "To determine whether a statute creates a private right of action in favor of a particular plaintiff, a court must analyze the statute itself and any relevant legislative history. The focal point is the legislative body's intent in enacting the statute. Unless the legislative intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist."

*Doe v. State ex rel. Miss. Dep't of Corr.*, 859 So. 2d 350, 356 (Miss. 2003) (quoting *Hodgson v. Miss. Dep't of Corrs.*, 963 F. Supp. 776, 791 (E.D. Wis. 1997)).

[4] The cases cited by the Plaintiffs were *Christmon v. Allstate Ins. Co.*, 82 F. Supp. 2d 612, 615 (S.D. Miss. 2000); *Hardy Bros. Body Shop v. State Farm Mut. Auto. Ins. Co.*, 848 F. Supp. 1276, 1287 (S.D. Miss. 1994); *Addison v. Allstate Ins. Co.*, 97 F. Supp. 2d 771, 773 (S.D. Miss. 2000); and *Christmon v. Allstate Ins. Co.*, 57 F. Supp. 2d 380, 381 (S.D. Miss. 1999).

Plaintiffs offer no challenge to Judge Smith's analysis. Accordingly, the Court concurs with the recommendation, and the Plaintiffs' statutory claim will be dismissed with prejudice.

### V. Res Judicata and Collateral Estoppel

Judge Smith analyzed a previous case filed by Plaintiffs Clinton Body Shop, Inc. and Clinton Body Shop of Richland, Inc. against some of the Defendants in this case. (Doc. 115 at 19-24). As a result of the granting of summary judgment against the Plaintiffs in that case, Judge Smith determined that the doctrine of claim preclusion barred their claims against the GEICO and Progressive defendants in this case, and that those claims should be dismissed with prejudice. (Doc. 115 at 24). The Plaintiffs do not object to this recommendation, and upon review, the Court sees no basis for rejecting the recommendation. However, the point is moot, as those claims are already being dismissed with prejudice on other grounds.

### VI. Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Report and Recommendation is affirmed in part and rejected in part, as set forth above. And it is further

**ORDERED** that the Plaintiffs' state law claims are **DISMISSED WITH PREJUDICE**. The Clerk is directed to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 27, 2016.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE